**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 95-40120
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PAUL ANTHONY ALIX, TROY DONAVAN BOUNDS, and KERRY
LERRON BASS,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

June 13, 1996

Before WISDOM, EMILIO M. GARZA, and PARKER, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendants Paul Anthony Alix, Troy Donavan Bounds, and Kerry Lerron Bass appeal their convictions and sentences arising from their involvement in a cocaine distribution scheme. We affirm.

I

Bass is a former chemical salesman who started his own business, KLB Environmental Services ("KLB"), in Houston, Texas. Bass sold cocaine to multiple parties on a regular basis. These transactions often took place at the KLB office. Bounds is a former employee of KLB. Bounds delivered cocaine for Bass to

several of Bass's regular purchasers. Some of these purchasers converted the cocaine into cocaine base, or "crack" cocaine, which was then transported to Victoria, Texas, for resale. One of Bass's purchasers testified that he had discussed with Bounds the sale of "crack" cocaine in Victoria. On at least one occasion, Bass rented an automobile which his purchasers used for sales trips to Victoria. Alix sold "crack" cocaine in Victoria. Although he did not work for KLB, Alix was listed on the KLB payroll.

Based on information from multiple informants, search warrants were obtained for Bass's residence in Pearland, Texas, for Bass's residence in Houston, Texas, and for the KLB office in Houston, Texas. Police seized cocaine, drug paraphernalia, cash, guns, business records, and tax information. Pursuant to a grand jury indictment, Bass, Bounds, and Alix were charged with conspiracy to distribute more than fifty grams of "crack" cocaine, in violation of 21 U.S.C. § 846. Bass and Bounds were also charged with conspiracy to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Bass was additionally charged with engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, with seven counts of aiding and abetting in the possession with intent to distribute "crack" cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2, with aiding and abetting in the commission of money laundering, in violation of 18 U.S.C. § 1957, and with four counts of failure to file income tax returns, in violation of 26

U.S.C. § 7203.

At jury selection in their joint trial, the only African-American on the jury panel was excused for cause. Bass and Bounds moved to strike the jury panel, and alternatively moved for a continuance to permit investigation of the number of African-Americans eligible for jury service in the Southern District of Texas, Victoria Division.[1] The district court denied both motions. At trial, the jury found Bass, Bounds, and Alix guilty on all counts. Bass was sentenced to ten concurrent terms of 360 months' imprisonment, followed by five years of supervised release, one concurrent term of 120 months' imprisonment, followed by three years of supervised release, four concurrent terms of twelve months' imprisonment, followed by one year of supervised release, and a $650 mandatory assessment. Bounds was sentenced to two concurrent terms of 235 months' imprisonment, followed by five years of supervised release, and a $100 mandatory assessment. Alix was sentenced to one term of 135 months' imprisonment, followed by five years of supervised release, and a $50 mandatory assessment. Bass, Bounds, and Alix filed timely notices of appeal.

II

A

Bass argues that the district court erred by denying his

---

[1]     Bass, Bounds, and Alix are all African-Americans.

motion to strike the jury panel.[2]  In reviewing a district court's

ruling on such a motion, we review determinations of fact for clear

error and determinations of law de novo.  *United States v.*

*McKinney*, 53 F.3d 664, 670-71 (5th Cir.), *cert. denied*, ___ U.S.

___, 116 S. Ct. 261, 133 L. Ed. 2d 184, *and cert. denied*, ___ U.S.

___, 116 S. Ct. 265, 133 L. Ed. 2d 188, *and cert. denied*, ___ U.S.

___, 116 S. Ct. 431, 133 L. Ed. 2d 346 (1995).  The Sixth Amendment

guarantees a criminal defendant the right to a trial by a jury

selected from a fair cross-section of the community.  *Taylor v.*

*Louisiana*, 419 U.S. 522, 527, 95 S. Ct. 692, 696, 42 L. Ed. 2d 690

(1975).  A defendant establishes a prima facie violation of the

fair-cross-section requirement by showing the following:

> [T]he defendant must show (1) that the group alleged to
> be excluded is a "distinctive" group in the community;
> (2) that the representation of this group in venires from
> which juries are selected is not fair and reasonable in
> relation to the number of such persons in the community;
> and (3) that this underrepresentation is due to
> systematic exclusion of the group in the jury-selection
> process.

*Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 668, 58 L. Ed.

---

[2]    The appellate brief of each defendant in this case expressly adopts by reference the arguments presented in the briefs of the other two co-defendants.  Rule 28(i) of the Federal Rules of Appellate Procedure provides for such adoption by reference in cases involving multiple appellants.  However, we have previously held that an appellant may not raise fact-specific challenges to his own conviction or sentence, such as sufficiency-of-the-evidence challenges or challenges to the application of the sentencing guidelines, by merely referring to similar challenges in another appellant's brief.  *United States v. Harris*, 932 F.2d 1529, 1533 (5th Cir.), *cert. denied*, 502 U.S. 897, 112 S. Ct. 270, 116 L. Ed. 2d 223, *and cert. denied*, 502 U.S. 917, 112 S. Ct. 324, 116 L. Ed. 2d 265 (1991), *and cert. denied*, 502 U.S. 1049, 112 S. Ct. 914, 116 L. Ed. 2d 814 (1992).  Therefore, to the extent that the issues raised by each defendant in this case have been properly adopted by the other defendants, our holding as to each issue in this opinion may be deemed to be our holding as to all three defendants.

2d 579 (1979). Bass presented no evidence, either at the time of his motion or at any time thereafter, pertaining to the second and third prongs of the *Duren* test.[3] Accordingly, Bass has not established a prima facie violation of the fair-cross-section requirement. We hold that the district court did not err by denying Bass's motion to strike the jury panel.

Alternatively, Bass argues that the district court erred by denying his motion for a continuance to permit investigation of the number of African-Americans eligible for jury service in the Southern District of Texas, Victoria Division. The decision of whether to grant or deny a continuance is vested in the sound discretion of the district court, and we will reverse that decision only where the defendant demonstrates an abuse of discretion resulting in serious prejudice. *United States v. Alford*, 999 F.2d 818, 821 (5th Cir. 1993). In light of the district court's findings,[4] and especially in light of Bass's failure to present any

---

[3] We note that a defendant cannot establish a prima facie violation of the fair-cross-section requirement by relying solely on the composition of the jury panel at his own trial. *Timmel v. Phillips*, 799 F.2d 1083, 1086 (5th Cir. 1986).

[4] After listening to the arguments of counsel, the district court stated the following:
I do not feel it's in the best interest of justice to grant the motion to have that type of delay in this trial. Again, while you may conduct those studies, surveys, or whatever, I am not convinced that they would indicate or prove that any of the irregularities that you are concerned with have actually happened or taken place.
I am not convinced that, at least from my knowledge of the racial makeup of the Victoria Division that the Jury would be any different if we struck this panel and summoned a new panel.
I think that we have selected these potential jurors in manner that has been used throughout the Southern District. I am not aware of any irregularities involved in that process.

evidence to the contrary, we hold that the district court did not abuse its discretion when it denied Bass's motion for a continuance.

B

Bass next argues that the district court erred when it denied his motion to suppress evidence seized from the KLB office and from his two residences. Our review of a district court's denial of a motion to suppress evidence seized pursuant to a warrant is limited to (1) whether the good-faith exception to the exclusionary rule applies, and (2) whether the warrant was supported by probable cause. *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). If the good-faith exception to the exclusionary rule applies, we need not reach the probable cause issue. *Id.*

Evidence obtained by officers who reasonably relied in good faith upon the validity of a warrant is admissible, even if the affidavit on which the warrant was based was insufficient to establish probable cause. *United States v. Leon*, 468 U.S. 897, 922-23, 104 S. Ct. 3405, 3420, 82 L. Ed. 2d 677 (1984). An officer may rely in good faith on the validity of a warrant so long as the warrant is supported by more than a "bare bones affidavit." *United States v. Pofahl*, 990 F.2d 1456, 1474 (5th Cir. 1993). An affidavit must establish a nexus between the place to be searched and the evidence sought. *United States v. Pace*, 955 F.2d 270, 276-77 (5th Cir. 1992). We review the reasonableness of an officer's reliance on a warrant de novo. *Satterwhite*, 980 F.2d at 321.

An IRS agent involved in the investigation of Bass, Bounds, Alix, and others gave the affidavit supporting the search warrants for the KLB office and Bass's residences. The affidavit detailed the findings of both federal and local law enforcement agencies investigating tax evasion and cocaine distribution in Texas and Louisiana. The affidavit included corroborated information from multiple informants who had purchased cocaine from Bass at the KLB office. The affidavit also contained information obtained from business and telephone records indicating that financial and tax records could be located at Bass's residences. We find that the search warrants at issue in this case were supported by more than a "bare bones" affidavit. Accordingly, we find that the officers reasonably relied in good faith on the validity of the warrants. Thus, the good-faith exception to the exclusionary rule applies, and the district court did not err when it denied Bass's motion to suppress evidence seized pursuant to these warrants.

C

Bounds and Alix argue that the evidence presented at trial was insufficient to support their conspiracy convictions. Specifically, Bounds argues that he did not know that the cocaine he delivered was being converted into "crack" cocaine for distribution in Victoria. Specifically, Alix argues that the Government failed to prove that he made an agreement with any other defendant to violate narcotics laws. We review sufficiency-of-the-evidence challenges to determine whether any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Smith*, 930 F.2d 1081, 1085 (5th Cir. 1991). In so doing, we view the evidence in the light most favorable to the Government, drawing all reasonable inferences in favor of the jury's verdict. *Id.* A conviction for a narcotics conspiracy requires proof beyond a reasonable doubt (1) that two or more people agreed to violate the narcotics laws, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator participated in the conspiracy. *United States v. Morris*, 46 F.3d 410, 420 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 2595, 132 L. Ed. 2d 842 (1995). An agreement between a defendant and the other alleged conspirators need not be proved by direct evidence, but may be inferred from a concert of action. *Id.* A defendant may be properly found guilty of a narcotics conspiracy, even absent knowledge of the exact details of the conspiracy or the exact identities of all the co-conspirators, so long as he "knowingly participates in the larger conspiratorial objectives." *United States v. Greenwood*, 974 F.2d 1449, 1457 (5th Cir. 1992), *cert. denied*, 508 U.S. 915, 113 S. Ct. 2354, 124 L. Ed. 2d 262 (1993).

With respect to Bounds, there was overwhelming evidence presented at trial that Bounds made cocaine deliveries for Bass. One witness testified that he observed more than one kilogram of cocaine in Bounds's home. There was also evidence presented that tended to indicate that Bounds knew that the cocaine he delivered

was being converted into "crack" cocaine. Pursuant to a valid search warrant, officers seized a box containing a spoon, a plastic baggie containing five grams of cocaine, and a small set of scales from Bounds's home. Telephone records showed numerous calls made to Bounds's pager number from a convenience store in Victoria where Bass's purchasers regularly sold "crack" cocaine. One of these purchasers testified that he and Bounds had discussed the success of the "crack" sales in Victoria. Bass's purchasers testified as to the amounts of powder cocaine they purchased from Bass and the amounts of subsequently produced "crack" cocaine that they sold in Victoria. Viewing the evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Bounds was a knowing participant in a conspiracy to distribute more than fifty grams of "crack" cocaine, and that Bounds was a knowing participant in a conspiracy to possess with intent to distribute more than five kilograms of cocaine. Accordingly, we hold that the evidence presented at trial was sufficient to support Bounds's conspiracy convictions.

With respect to Alix, evidence at trial established that Alix obtained "crack" cocaine from Bass's purchasers and sold "crack" cocaine in Victoria. Witnesses also testified that Alix supplied other street-level distributors with "crack" cocaine to sell in Victoria. These witnesses testified as to the amounts of "crack" cocaine that they either sold to Alix, bought from Alix, or

observed in the possession of Alix.  In addition, check stubs seized from the KLB office show payments made to Alix for "payroll," even though Alix was not a KLB employee.  Alix's name and phone number were also found on a desk calendar in the KLB office.  Viewing the evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Alix was a knowing participant in a conspiracy to distribute more than fifty grams of "crack" cocaine.  Accordingly, we hold that the evidence presented at trial was sufficient to support Alix's conspiracy conviction.

D

Bounds and Alix also argue that the district court erred in calculating their base offense levels under the sentencing guidelines.  Specifically, Bounds argues that the district court erred by finding that 4.68 kilograms of "crack" cocaine were attributable to him for sentencing purposes.  Specifically, Alix argues that the district court erred by finding that seventy grams of "crack" cocaine were attributable to him for sentencing purposes.  A district court's determination of the amount of drugs attributable to a defendant at sentencing is a factual finding, reviewable under the clearly erroneous standard.  *United States v. Maseratti*, 1 F.3d 330, 340 (5th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1096, 127 L. Ed. 2d 409, *and cert. denied*, ___ U.S. ___, 114 S. Ct. 1552, 128 L. Ed. 2d 201, *and cert. denied*, ___ U.S. ___, 115 S. Ct. 282, 130 L. Ed. 2d 198 (1994).  The sentencing

-10-

guidelines provide that a defendant's offense level for a drug trafficking offense is determined by the quantity of drugs involved. U.S.S.G. § 2D1.1(a)(3). For a defendant convicted of conspiracy, this quantity includes amounts attributable to the conduct of others in furtherance of the conspiracy so long as those amounts were reasonably foreseeable to the defendant. U.S.S.G. § 1B1.3(a)(1), comment. (n.1). Consistent with this standard, it is proper to sentence a defendant under the drug quantity table for "crack" cocaine if the conversion of powder cocaine into "crack" cocaine is foreseeable to him. *United States v. Angulo-Lopez*, 7 F.3d 1506, 1511 (10th Cir. 1993), *cert. denied*, ___ U.S. ___, 114 S. Ct. 1563, 128 L. Ed. 2d 209 (1994).

With respect to Bounds, evidence at trial established that he regularly delivered powder cocaine to Bass's purchasers. On one occasion, one kilogram of cocaine was observed in Bounds's home. Testimony also indicates that Bounds knew, through conversations with at least one of Bass's regular purchasers, that the cocaine sold by Bass was routinely converted into "crack" cocaine for sale in Victoria. Having reviewed the testimony of the witnesses with respect to the amounts of "crack" cocaine involved in transactions foreseeable to Bounds, we find that the district court's finding that 4.68 kilograms of "crack" cocaine were attributable to Bounds for sentencing purposes is not clearly erroneous. We hold that the district court did not err in calculating Bounds's base offense

level.[5]

With respect to Alix, evidence at trial established that he engaged in numerous transactions involving the purchase and sale of "crack" cocaine. Further, the evidence establishes that Alix obtained this "crack" cocaine from at least one of Bass's regular purchasers. Having reviewed the testimony of the witnesses with respect to the amounts of "crack" cocaine involved in transactions foreseeable to Alix, we find that the district court's finding that seventy grams of "crack" cocaine were attributable to Alix for sentencing purposes is not clearly erroneous. We hold that the district court did not err in calculating Alix's base offense level.[6]

---

[5] Bounds also argues that § 2D1.1(C)(3) of the sentencing guidelines violates equal protection because of the ratio between punishments for powder cocaine and punishments for "crack" cocaine. We have repeatedly rejected this argument and do so again. *See United States v. Buchanan*, 70 F.3d 818, 828 n.9, 829 n.10 (5th Cir. 1995) (citing cases), *cert. denied*, ___ U.S. ___, 116 S. Ct. 1340, 134 L. Ed. 2d 490 (1996).

[6] Alix also contends that the district court erred in calculating his base offense level by denying his request for a two-level "minor participant" adjustment, pursuant to U.S.S.G. § 3B1.2. We review a district court's finding that a defendant was not a minor participant in the offense for clear error. *United States v. Zuniga*, 18 F.3d 1254, 1261 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 214, 130 L. Ed. 2d 142 (1994). The evidence at trial shows that Alix not only sold the "crack" cocaine that he obtained from Bass's purchasers, but also that Alix distributed "crack" cocaine to other street-level distributors. The district court's finding that Alix was not a minor participant in a conspiracy to distribute "crack" cocaine was not clearly erroneous. Accordingly, the district court did not err in denying Alix's request for a two-level "minor participant" adjustment.

Bass also argues that the district court erred when it denied his motion for a downward departure from the sentencing range applicable to him under the sentencing guidelines. We will not review a district court's refusal to depart from the guidelines unless the refusal was in violation of the law. *United States v. Hatchett*, 923 F.2d 369, 372 (5th Cir. 1991). However, we will review a refusal to depart if the district court's decision was based on a mistaken belief that it had no legal authority to depart. *United States v. Burleson*, 22 F.3d 93, 94-95 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 283, 130 L. Ed. 2d 199 (1994). In this case, both sides presented argument to the district court concerning the departure provision and its factors. We find that the district

III

Based on the foregoing, we AFFIRM.

---

court's decision was not based on a mistaken belief that it had no legal authority to depart. Accordingly, we hold that the district court did not err when it denied Bass's motion for a downward departure.