IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-11299

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHARANDA PURLETTE JONES,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Northern District of Texas
(3:99-CR-111-1-P)

---

February 16, 2001

Before GOODWIN[*], GARWOOD and JONES, Circuit Judges.[**]

GARWOOD, Circuit Judge:

Defendant-appellant Sharanda Purlette Jones (Jones) appeals her

conviction and life sentence for conspiracy to distribute cocaine base.

We affirm.

**Facts and Proceedings Below**

On June 8, 1999, the grand jury for the Northern District of Texas,

Dallas Division, charged Jones in a seven count superseding indictment.

---

[*]Circuit Judge of the Ninth Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R.47.5 the Court has determined that this
opinion should not be published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R. 47.5.4.

Count 1 alleged conspiracy, from "at least in or about June 1994" until September 1998, to commit the offense of "distribution of 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance" in violation of 21 U.S.C. §§ 841(a)(1), 841 (b)(1)(A)(iii) and 846.  Count 1 named Jones and five other conspirators plus others known and unknown to the grand jury, listed eight overt acts[1] "among others" and, in addition, incorporated the allegations set forth in Counts 2-7 as overt acts.  Counts 2-7 each charged Jones and others with having committed on or about diverse specific dates in February 1998 one specific act of distribution of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), and 18 U.S.C. § 2.  Overt acts 1 and 8, as well as the specific acts alleged in Counts 2-7, pertained to the distribution of cocaine out of the residence of Jones's mother (and named co-conspirator) Genice Stribling, located at 705 Rosehill in Terrell, Texas.

At trial, the government sought to prove that Jones purchased large amounts of powder cocaine from dealers in Houston, Texas and sold up to 40 kg of powder cocaine to Julie Franklin and Keith Jackson.  Both Franklin and Jackson entered into plea agreements with the government and testified at trial.  One of the Houston suppliers of cocaine, Joseph Antoine, also entered into a plea agreement and testified at trial.  The

---

[1]These overt acts were alleged to have been committed on or about specific dates in February 1995, June 1997, November 1997, July 1998, and May 1998, and also included allegations of diverse continuing or repeated conduct from January 1997 until May 1998, from January 1997 until November 1997, and from June 1994 until November 1997.

2

government sought to show that the dwelling at 705 Rosehill was a "crack house" and that Jones supplied the house with cocaine base ("crack") and ran the operation, e.g. controlling the price at which the cocaine base was sold and the like. On August 16, 1999, over Jones's objection, the district court granted the government's motion to sever the trials of the other five coconspirators named in Count 1. On August 26, 1999, a jury convicted Jones on Count 1 and acquitted her on Counts 2-7.

The pre-sentence report ("PSR") held Jones accountable for a total of 23.92 kilograms of cocaine base, producing a base offense level of 38. Under U.S.S.G. § 2D1.1(a)and (c), the base offense level for a defendant held responsible for over 1.5 kg of cocaine base is 38. The 23.92 kg represents 10.528 kg of cocaine base distributed from the dwelling at 705 Rosehill and 26.78 kg of powder cocaine that Jones sold to Julie Franklin and Keith Jackson knowing that they were converting it to cocaine base. 13.39 kg of the 23.92 kg total represents the amount of cocaine base that the 26.78 kg of 50% pure powder cocaine would be converted into. The PSR also recommended a two level increase for possession of a firearm. The government objected to the report because it did not recommend any increases for being the leader or organizer of the conspiracy or for obstruction of justice (perjury). The probation office accepted the government's objections and amended its report to include a four level increase for Jones's role in the offense and a two level increase for her false denials of guilt on the stand. The amended report yielded a total offense level of 46 which,

3

notwithstanding Jones's criminal history category of I, yielded a guideline range of imprisonment for life. On November 10, 1999, the district court sentenced Jones to life in prison.

Jones appeals her conviction and sentence. She argues that her acquittal on Counts 2-7 indicates that the jury did not believe she was involved with the alleged crack dealing at 705 Rosehill. Specifically, she asserts: 1) there was a fatal variance between the indictment, which alleged one conspiracy, and the evidence adduced at trial, which showed three conspiracies; 2) since it cannot be determined whether the conspiracy conviction rested upon the defendant's Franklin-Jackson activities or her 705 Rosehill activities, the case must be remanded because the evidence as to the 705 Rosehill activities is insufficient; 3) *Apprendi v. New Jersey*, 120 S.Ct. 2348 (2000), necessitates that her sentence be overturned because the jury was not required to find that the amount of cocaine base she conspired to distribute was at least 50g; and 4) the district court committed clear error when it accepted the PSR's recommendations as to the amount of cocaine attributed to her as well as the enhancements for possession of a firearm, her role as leader or organizer of the conspiracy, and obstruction of justice (perjury).

### Discussion

### I.

Count 1 of the superseding indictment charges Jones with membership in a conspiracy that obtained powder cocaine from suppliers in Houston. Some of the Houston cocaine was sold by Jones to Julie Franklin and

4

Keith Jackson, who converted the powder cocaine into cocaine base before selling the crack to others. Some of the Houston cocaine was converted into cocaine base and sold out of the residence at 705 Rosehill. Jones alleges the proof at trial showed not one, but three, conspiracies: (1) Antoine's sales of powder cocaine from Houston, (2) Franklin and Jackson's acquisition of powder cocaine and distribution of cocaine base, and (3) cocaine base distribution from the residence at 705 Rosehill.

Where the evidence suffices to show the defendant's guilt of a conspiracy embraced in the allegations of the indictment, even though other conspiracies may also be embraced therein, the doctrine of fatal variance principally exists to prevent a defendant from being prejudiced by the transference of guilt that can occur when voluminous evidence that only implicates others is presented at trial. *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1126 (5th Cir. 1997).

To prevail on her fatal variance claim, Sharanda Jones must establish that: (1) a variance existed between the indictment and the proof at trial, and (2) the variance affected her substantial rights. *Id.* Determining whether a variance existed requires us to ascertain what number of conspiracies was proven at trial. *Id.* Of course, it is often the case that "[w]hether the evidence shows one or multiple conspiracies is a question of fact for the jury." *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1126 (5th Cir. 1997) (quoting *United States v. Guerra-Marez*, 928 F.2d 665, 671 (5th Cir. 1991)). Here, the

5

jury received Fifth Circuit Pattern Jury Instruction 2.21, *Multiple Conspiracies*.[2]  No objection to this charge or request for further instructions in this respect was made by Jones.  The jury's conviction as to Count 1 manifests that it found not only that the single conspiracy alleged in the indictment existed, but also that Jones was a member of that conspiracy.  "A jury's finding that the government proved a single conspiracy must be affirmed unless the evidence viewed in the light most favorable to the government would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt." *Pena-Rodriguez*, 110 F.3d at 1126.  "The principal considerations in counting conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *Id.* (quoting *United States v. Morris*, 46 F.3d 410, 414 (5th Cir. 1995)).

This Court has taken a very broad view of the first criterion, the existence of a common goal.  *United States v. Morris*, 46 F.3d 410, 415 (5th Cir. 1995).  It is enough that the alleged conspirators shared a common goal to "derive personal gain from the illicit business of buying and selling cocaine." *Id.*  All of the named conspirators shared this

---

[2]Fifth Circuit PJI 2.21 provides:
"You must determine whether the conspiracy charged in the indictment existed, and, if it did, whether the defendant was a member of it.  If you find that the conspiracy charged did not exist, then you must return a not guilty verdict, even though you find that some other conspiracy existed.  If you find that a defendant was not a member of the conspiracy charged in the indictment, then you must find that defendant not guilty, even though that defendant may have been a member of some other conspiracy."

6

goal.

As to the second criterion, the nature of the scheme, "this [C]ourt has moved to a more functional and substantive analysis. . . . [T]he existence of a single conspiracy will be inferred where the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture, where there are several parts inherent in a larger common plan." *Id.* at 415-16. In *Morris*, we found members of two separate criminal organizations that competed against each other in the supply of cocaine to be part of a single conspiracy because both organizations sold bulk quantities of cocaine to the same cocaine distributor. We observed that "although the sellers and the purchasers may not have had a direct relationship with each other, each was necessary for the continued success of the venture." *Id.* at 416. Here, the jury could reasonably find that Jones, over an extended period of time and through a regular course of dealing, was receiving cocaine from Antoine and supplying it to Franklin, Jackson and those in business at 705 Rosehill. Under *Morris*, the jury could reasonably find that those in business at 705 Rosehill, Franklin and Jackson, and Antoine were all contributing to the success of the same criminal venture and, therefore, were part of a single conspiracy notwithstanding the absence of direct relationships.

Finally, the third criterion, the overlapping of participants in the various dealings, is satisfied under *Morris* if there is sufficient evidence that Franklin and Jackson, those in business at 705 Rosehill,

and Antoine were all conspiring with Jones to transact illicit business in cocaine. *Id.* It is not necessary that any of these other participants know each other as long as each knowingly participated with core coconspirator Jones to achieve a common goal. *Id.; United States v. Gallardo-Trapero*, 185 F.3d 307, 315 (5th Cir. 1999). Jones admits that the government's proof showed that she purchased cocaine from Antoine and sold cocaine to Julie Franklin. The evidence showed that Jones and Franklin contemplated that the powder cocaine sold to Franklin would be converted into crack for resale, as when Franklin reported a significant quantity of the powder would not properly cook-up Jones replaced it. A regular course of dealing over an extended period was adequately shown.

Thus, the question of whether a variance exists boils down to whether the evidence at trial was such that a reasonable juror could have believed, beyond a reasonable doubt, that Jones conspired with those in business at 705 Rosehill to distribute cocaine base.

To sustain a conviction for conspiracy to distribute cocaine base under 21 U.S.C. §§ 841(a) and 846, the evidence at trial must be sufficient for a reasonable juror to conclude, beyond a reasonable doubt: (1) the existence of an agreement between two or more persons to distribute cocaine base, (2) the defendant's knowledge of the agreement, and 3) the defendant's voluntary participation in the conspiracy. *Gallardo-Trapero*, 185 F.3d at 317. The evidence is viewed in the light most favorable to the prosecution, drawing all reasonable inferences in

8

support of the jury's verdict. *Id.* Circumstantial evidence may be relied upon. *Id.*

In support of her insufficiency claim, Jones points to her acquittal on Counts 2-7, which concerned the distribution of cocaine base from 705 Rosehill. Jones infers from her acquittal on Counts 2-7 that the jury did not believe she was at all involved in the drug dealing that occurred at 705 Rosehill. She infers too much. First, besides appellant Sharanda Jones, Count 1 of the indictment specifically named Genice Stribling, Mitchell W. King, Sharena Stribling, Earnest Jones, and Kevin Henderson. These five individuals were not associated with the Antoine or Franklin-Jackson aspects of the conspiracy. As previously mentioned, Count 1 also referred to other conspirators both known and unknown to the grand jury, presumably Julie Franklin and Keith Jackson. In finding Jones a member of the conspiracy involving these five named coconspirators, the jury had to believe Jones was, to some extent at least, involved with the distribution of cocaine base out of the residence at 705 Rosehill. Moreover, even if conviction on Count 1 was inconsistent with acquittal on Counts 2-7, the conviction on Count 1 stands unless there is not sufficient evidence to support it. *United States v. Short*, 181 F.3d 620, 625 (5th Cir. 1999).

Evidence of Sharanda Jones's involvement in a conspiracy to distribute cocaine at 705 Rosehill is sufficient, though only barely so. Kelly Douglas, Earnest Jones's girlfriend, testified that when Genice Stribling ran out of cocaine, Genice would telephone Sharanda Jones in

9

Douglas' presence. Within 20 minutes to two hours, Sharanda Jones would arrive at 705 Rosehill carrying a purse or paper bag. Douglas never saw Sharanda Jones actually deliver cocaine to Genice Stribling because either Jones would disappear into Genice's room or Douglas would be asked to leave the room. After Sharanda Jones's visits, Genice would again have cocaine base to sell.

Bonita Polk testified that Genice Stribling gave her twenty bags of crack to sell at $20 apiece. Instead of selling all twenty bags, Bonita Polk sold only three and consumed the rest. Thus, when she returned two days later, she only had $60 to give Genice Stribling instead of the expected $400. Polk falsely told Stribling that the rest of the crack had been stolen and promised to pay her back. Stribling apparently accepted this explanation but Sharanda Jones, who was present during this exchange, immediately unleashed a torrent of the most vile profanity against Polk for taking advantage of her crippled mother.

The testimony of Douglas provides some circumstantial evidence that Sharanda Jones was supplying the house at 705 Rosehill with cocaine base, and involved in a conspiracy to distribute cocaine base from there. Polk's testimony is the basis of a weak inference that the lost cocaine was Jones's, not Stribling's. While the collective force of this circumstantial evidence is not strong, it is enough to sustain the jury's verdict that the single conspiracy in the indictment existed and that Sharanda Jones was a member thereof.[3]

---

[3]In her brief to this Court, Jones also mounted a separate challenge to the sufficiency of the evidence as to her conviction on

Even if the evidence of Jones's involvement in the drug distribution at 705 Rosehill was not sufficient, which would mean that there was a variance between the indictment and the proof offered at trial, Jones would still not be entitled to relief because she cannot show that the variance affected her substantial rights. This Court has repeatedly held that "when the indictment alleges the conspiracy count as a single conspiracy, but the government proves multiple conspiracies and a defendant's involvement in at least one of them, then clearly there is no variance affecting that defendant's substantial rights." *Pena-Rodriguez*, 110 F.3d at 1128. *See also Morris*, 46 F.3d at 417; *United States v. Faulkner*, 17 F.3d 745, 762 (5th Cir. 1994). Jones correctly points out that this rule is not absolute and that she may still obtain relief if she can establish reversible error according to general principles of joinder and severance. *Pena-Rodriguez*, 110 F.3d at 1128. Under the these general principles, Jones "bears the burden of showing specific and compelling prejudice that resulted in an unfair trial and such prejudice must be of a type against which the trial court was unable to afford protection." *Id.*

Jones does not meet this burden. Over Jones's objection, the trial court severed the other five named conspirators. Therefore, Jones's the only possible source of prejudice is the joinder of offenses (the

Count 1. Her only argument is that the government did not offer sufficient evidence tying her to the drug distribution at 705 Rosehill. Jones does not argue insufficiency as to her involvement with Antoine or Franklin and Jackson. Thus, our resolution of the variance issue also disposes of Jones's insufficiency claim.

11

Antoine-Franklin-Jackson conspiracy with the 705 Rosehill conspiracy). Jones admits that the evidence is sufficient to convict her as to the Franklin-Jackson conspiracy. It is significant that the trial court gave a multiple conspiracy instruction, which this Court has repeatedly held is generally adequate to cure any possibility of prejudice. Id. at 1128-29; *Faulkner*, 17 F.3d at 761-62 & n.19; *Guerra-Marez*, 928 F.2d at 672. It is also significant that Jones failed to object to this instruction. Moreover, Jones's acquittal on Counts 2-7 indicates that she was not a victim of guilt transference. Finally, as in *Pena-Rodriguez*, the evidence presented at trial was not especially complex; therefore, the risks of juror confusion and prejudice in the form of guilt transference were minimal.

In sum, we find that there was no fatal variance between the indictment and the proof at trial and that, even if such a variance existed, Jones's substantial rights were not affected thereby.

## II.

Jones concedes that the evidence as to the Franklin-Jackson cocaine conspiracy, if believed, was sufficient to support a conviction for violating 21 U.S.C. §§ 841(a)(1) and 846. However, Jones maintains that there was insufficient evidence as to her voluntary participation in cocaine distribution at 705 Rosehill. Jones opines that her case must be remanded to determine whether her conviction on Count 1 was based on the sufficient ground of the Franklin-Jackson cocaine conspiracy or the insufficient ground of the 705 Rosehill conspiracy.

12

As we have already discussed, *if* the evidence tying Jones to cocaine distribution at 705 Rosehill is not sufficient, then the proof at trial established two conspiracies,[4] not the single conspiracy charged in the indictment.  The law of variance prescribes that we treat this problem as one of joinder of these "separate" conspiracy offenses and provide relief only if such joinder resulted in an unfair trial according to traditional principles of joinder and severance.  It is well-settled that if the "joinder" of conspiracy offenses did not result in an unfair trial and there is sufficient evidence to support the defendant's conviction as to one of the conspiracy offenses, then the original conspiracy conviction stands.  Jones now attempts to circumvent this well-settled law by arguing that if the evidence is insufficient as to any one of the separate conspiracy offenses, the case must be remanded to determine whether the original conspiracy conviction was predicated upon that separate conspiracy offense for which sufficient evidence was not produced at trial.  We decline Jones's invitation to undermine the law of variance in this manner.[5]

---

[4]Jones alleges that the proof established three conspiracies, but never attempts to show that the evidence tying her to Antoine was insufficient.

[5]Jones frames the issue as though the original conviction on Count 1 could have rested on several alternative grounds.  While that is clearly not correct, the law of variance, as we have described, achieves an analogous result provided there is no prejudice from the joinder of defendants or offenses.  Moreover, it is well-settled that if a conviction could rest on two bases but there is sufficient evidence for only one, the conviction stands. *Griffin v. United States*, 112 S.Ct. 466, 473 (1991) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's

## III.

"[I]f the government seeks enhanced penalties based on the amount of drugs under 21 U.S.C. § 841(b)(1)(A) or (B), the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt." *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000). Under 21 U.S.C. § 846 the penalty for conspiracy is the same as that proscribed for the offense which was the object of the conspiracy, here the distribution of cocaine base. 21 U.S.C. § 841(a) denounces, *inter alia*, the distribution of a controlled substance, and the penalty for a violation of section 841(a) is fixed by section 841(b). Here, the government did seek enhanced penalties under 21 U.S.C. § 841(b)(1)(A)(iii), which provides for a prison sentence of from ten years to life if the section 841(a) violation involves 50 grams or more of a mixture or substance containing cocaine base. The indictment alleged that Jones had conspired to distribute 50 grams or more of a mixture or substance containing a detectable amount of cocaine base, and the district court's charge to the jury repeated this allegation. However, the charge did not require the jury to find beyond a reasonable doubt that Jones had conspired to distribute 50 grams or more of a substance containing a detectable amount of cocaine base. Because the jury did not have to find the drug quantity beyond a reasonable doubt, Jones requests that she be resentenced under 21 U.S.C. § 841(b)(1)(C).

indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." (quoting *Turner v. United States*, 90 S.Ct. 642, 654 (1970))).

14

The district court's failure to submit the drug quantity as an element of Count 1 that had to be found beyond a reasonable doubt was error notwithstanding the jury instructions' recitation of the indictment's drug quantity allegation. *United States v. Slaughter*, 2000 WL 1946670, *3 (5th Cir. 2000). But because Jones did not object to the instruction, there can be no relief unless the error was plain. *Id.* "Plain error" requires: (1) an error, (2) that is plain or obvious, and (3) that affected the defendant's substantial rights. *United States v. Olano*, 113 S.Ct. 1770, 1776 (1993). The third criterion requires the defendant to bear the burden of making a showing of prejudice from the error, i.e. that the error probably influenced the verdict. *Id*. at 1778.

In light of *Doggett*, failure to instruct the jury that the drug quantity was an element of the crime must be considered obvious error (though the trial court did not have the benefit of *Apprendi*). However, Jones does not even attempt to make the showing of prejudice required by *Olano*. Even if Jones could, somehow, establish that the jury probably would have acquitted her on Count 1 had the drug quantity been included as an element thereof, relief under FED. R. CRIM. P. 52(b) is permissive, not mandatory. *Id.* Our discretion should only be exercised to provide relief if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 1779 (quoting *United States v. Atkinson*, 56 S.Ct. 391, 392). Such is not the case, nor is there any reasonable possibility of prejudice, in a trial

15

such as this in which the defendant denied involvement with any cocaine or cocaine base, in which drug quantity was not at all an issue and at which evidence was presented that showed the defendant trafficked in many kilograms of cocaine knowing it would be converted into cocaine base. There is really no reasonable possibility that a jury would have found Jones guilty of conspiring to distribute some quantity of cocaine base less than 50 grams but not guilty of conspiring to distribute 50 grams or more. Accordingly, we reject Jones's *Apprendi* and *Doggett* based request for resentencing.

IV.

Jones complains about every aspect of her sentencing; specifically, the district court's determination that her base offense level was 38 and its decision to apply four upward adjustments to that base offense level to achieve a final offense level of 46. The district court's factual findings as to these matters are reviewed only for clear error. *United States v. Cho*, 136 F.3d 982, 983 (5th Cir. 1998).

A.

U.S.S.G. §§ 2D1.1(a) and (c) provide for a base offense level of 38 if the defendant conspired to traffic in at least 1.5 kilograms of cocaine base. Jones first argues that it was clear error for the district court to find that the conversion of powder cocaine into cocaine base by Franklin and Jackson was foreseeable to her. We disagree. "[I]t is proper to sentence a defendant under the drug quantity table [U.S.S.G. § 2D1.1(C)] for 'crack' cocaine if the

16

conversion of powder cocaine into 'crack' cocaine is foreseeable to him." *United States v. Alix*, 86 F.3d 429, 437 (5th Cir. 1996) (quoting *United States v. Angulo-Lopez*, 7 F.3d 1506, 1511 (10th Cir. 1993). The record indicates that Jones knew that Julie Franklin was converting the powder cocaine Jones sold her into cocaine base. In fact, Julie Franklin complained to Jones because she was having difficulty accomplishing the conversion. Because Franklin was such a fine customer, Jones replaced two kilograms of cocaine that Franklin asserted would not "rock up" properly. On one occasion, some of the cocaine Franklin returned had already been "rocked up". On other occasions, Franklin and Jones would discuss Franklin's conversion technique. The PSR attributed 26.78 kg of powder cocaine to Jones, which was determined to be convertible into 13.39 kg of cocaine base. There was testimony at trial that Jones had sold 36-40 kg of powder cocaine to Franklin. This evidence, without more, provides ample support for the base offense level of 38.

The PSR also held Jones responsible for 10.528 kg of cocaine base from 705 Rosehill. We do not know how the probation office arrived at this quantity, but Jones argues only that there was no evidence to support any involvement by her in the distribution of cocaine base at 705 Rosehill. We have already decided that there was sufficient evidence adduced at trial to support a rational juror's conclusion, beyond a reasonable doubt, that Jones was involved with crack distribution at 705 Rosehill. Thus, the district court's finding, by

17

preponderance, that Jones was so involved is not clearly erroneous.

B.

Jones objects to the two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1).

> "Weapon possession is established if the government proves by a preponderance of the evidence that a temporal and spatial relationship existed between the weapon, the drug trafficking activity, and the defendant. The government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred."

*United States v. Caicedo*, 103 F.3d 410, 412 (5th Cir. 1997) (citations omitted). Jones admitted to carrying a firearm with her on all of her trips to Houston, though she denied ever transporting cocaine during any of those trips. The evidence at trial strongly indicates that Jones did transport cocaine from Houston to Dallas on many occasions. This, coupled with her admission that she was always carrying a firearm on these trips, justifies the two-level enhancement under *Caciedo*.

C.

Jones also asserts that the district court clearly erred in enhancing her offense level for being the leader/organizer and for obstruction of justice in the form of perjury when she took the stand in her own defense. Neither claim has merit, as the record supports both findings.

**Conclusion**

For the reasons stated herein, the conviction of Sharanda Jones as to Count 1 of the superseding indictment and the life sentence imposed

18

therefor are

AFFIRMED.