**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**September 18, 2007**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

—————

06-30954
Summary Calendar

—————

UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

                    v.

SAMMY DAVIS, JR,

                              Defendant-Appellant.

—————

Appeal from the United States District Court for the
Western District of Louisiana, Lafayette

—————

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

PER CURIAM:*

     Plaintiff-Appellant, Sammy Davis, Jr. (Davis), appeals his
conviction for possession of a firearm by a convicted felon in
violation of 18 U.S.C. § 922(g)(1).  Concluding that the district
court properly denied his motion to suppress and that the evidence
is sufficient to sustain his conviction, we AFFIRM.

     I.   BACKGROUND

     In 1999, Stevie Charlot began buying crack cocaine from Davis

———————————

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and his extended family in Church Point, Louisiana.    C h a r l o t later began working as a paid informant for the Acadia Parish Drug Task Force (APDTF).  On October 22, 2001, Charlot contacted an APDTF narcotics investigator, Agent Brian Hundley, and informed him that Davis's brother, Edward Colomb, was in possession of a large amount of crack cocaine.  Based on this information, the agents planned to have Charlot conduct a controlled drug transaction that day at 847 South Broadway, the home of Davis's mother, Mary Colomb.

Agent Hundley and another APDTF agent took Charlot to a secluded area near the Colomb residence.  The agents gave Charlot $50 to purchase the drugs and an audio transmitter that was then hidden in a pack of cigarettes in Charlot's sock.  Charlot demonstrated that his pockets were empty by turning them inside out.  Charlot and the agents agreed that, after the drug buy, they would meet at a nearby church.

Charlot exited the vehicle, and the agents observed him walk to the yard of the Colomb residence but a fence blocked their view of his entrance into the house.  After a few seconds, the agents heard Mary Colomb's voice over the transmitter.

Charlot asked to purchase $50 worth of crack ("score a 50"), and Mary responded that he would have to wait because Edward was not there.  Although Mary patted down Charlot, she did not discover the transmitter in the cigarette pack.  Edward arrived, and the agents heard his voice over the transmitter.  Charlot paid Edward $50 and left.  Charlot met the agents as planned and gave them the

three rocks of crack and the transmitter.[1]

The agents then obtained a search warrant for the Colomb residence and executed it that night. Davis, Mary, Mary's husband, and Davis's sister were at the home when the agents executed the search warrant. Davis was in a rear bedroom of the house. After Agent Reginald Guidry escorted Davis from the bedroom to a sofa in the living room, other agents searched the house. Agent Hebert found a 16-gauge Mossberg shotgun in a closet in the rear bedroom. Agent Guidry asked Davis who owned the gun, and Davis admitted that it was his gun. He also admitted that his bedroom had the shotgun in the closet.

In May 2002, Davis was charged by indictment with several counts of trafficking in cocaine and one count of possession of a firearm by a convicted felon. He pleaded not guilty and filed a motion to suppress, contending that affiant had deliberately or recklessly misled the issuing state judge. On August 16, the magistrate judge conducted a hearing on the motion. On August 22, the prosecutor sent a letter to defense counsel advising that Agent Hundley had been mistaken when he testified that the Colomb residence was surrounded by a privacy fence; instead, it was surrounded by a chain link fence.

On September 11, the magistrate issued a report recommending that the motion to suppress be denied. On October 15, Davis filed

---

[1] The APDTF paid Charlot for conducting this controlled drug transaction.

objections based primarily on Agent Hundley's mistaken testimony regarding the fence. As a result of the objections, the magistrate judge conducted a second evidentiary hearing to determine whether the mistaken testimony was material and whether it affected the court's credibility determination. The magistrate issued a second report recommending denial of the motion to suppress, concluding that any errors were immaterial and "innocent and easily explained." Over Davis's objections, the district court adopted the findings of the magistrate and denied the motion to suppress.

Subsequently, Davis filed a motion to sever the instant charge of possession of a firearm by a convicted felon from the remaining five charges in the indictment. Ultimately, the district court granted the motion to sever. Davis was tried on the sole charge of possession of a firearm by a convicted felon. After a jury found him guilty, the district court imposed a 15-month sentence of imprisonment. Davis appeals.

II. ANALYSIS

A. Motion to Suppress

Davis argues that the district court erred in denying his motion to suppress. "Our review of a district court's denial of a motion to suppress evidence seized pursuant to a warrant is limited to (1) whether the good-faith exception to the exclusionary rule applies, and (2) whether the warrant was supported by probable cause." *United States v. Alix*, 86 F.3d 429, 435 (5th Cir. 1996).

We need not address the probable cause inquiry if the good-faith exception applies. *Id.*

Findings of fact are accepted unless clearly erroneous or based on an incorrect view of the law. *United States v. Randall*, 887 F.2d 1262, 1265 (5th Cir. 1989). A clearly erroneous finding is one that is not plausible in light of the record viewed in its entirety. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573-74 (1985).

Davis asserts that Agent Hundley made material misrepresentations regarding the informant's reliability in his affidavit in support of the search warrant. This Court will uphold a police officer's good-faith reliance on a warrant unless "the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *United States v. Mays*, 466 F.3d 335, 343 (5th Cir. 2006), *cert. denied,* 127 S.Ct. 1313 (2007) (citation and internal quotation marks omitted).

Specifically, Davis asserts that Agent Hundley's affidavit indicates that he had past dealings with Charlot that demonstrated Charlot's reliability. Davis states that this is belied by Agent Hundley's subsequent testimony that this was the first time he worked with Charlot. As the government responds, although Hundley testified that this transaction was the first time he had worked with Charlot, he had learned through another officer about

5

Charlot's reliability on other cases. Indeed, there was evidence of Charlot's work as an informant resulting in the seizure of drugs on other occasions. The district court did not clearly err in finding no false statements in the affidavit regarding Agent Hundley's representation of Charlot's reliability.

Davis also points to an affidavit and a tape-recorded statement made by Charlot in which he changed his story, claiming that he did not buy any drugs at the Colomb residence. However, the magistrate judge was fully aware of the contradictory statements made by Charlot. The magistrate judge concluded that Charlot's motive for changing his statement was "to keep his cover" and "insure his safety." The district court's credibility determinations are quite plausible and thus not clearly erroneous.

Additionally, Davis contends that because the affidavit did not provide that Charlot was a convicted felon and a crack addict, the affidavit did not provide probable cause. Davis has failed to show that Agent Hundley's statements were false or that he had reckless disregard for the truth. Thus, because Agent Hundley acted in good faith, we need not reach the inquiry regarding probable cause. *Alix*, 86 F.3d at 435. Nonetheless, we find that there was probable cause in light of the monitored, controlled drug transaction at the Colomb residence. *Cf. Mays,* 466 F.3d 343 (finding probable cause when informant had made controlled buys at the residence and officer independently corroborated information

provided by informant through audio surveillance).  The district court properly denied the motion to suppress.

### B.    Sufficiency of the Evidence

Davis argues that the evidence is insufficient to sustain his conviction for felon in possession of a firearm.  Davis admitted to Agent Guidry that it was his gun found in his bedroom closet at his parents' house.  Nonetheless, Davis contends that his conviction cannot be sustained on the basis of his uncorroborated confession.

The government asserts, and Davis has not disputed, that no motion for a judgment of acquittal was made.  Thus, we review the evidence only for a manifest miscarriage of justice. *United States v. Avants,* 367 F.3d 433, 449 (5th Cir. 2004).  A manifest miscarriage of justice has been shown where the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking. *Id.*

To obtain a conviction for felon in possession of a firearm, the government must prove that the defendant (1) has been convicted of a felony; (2) possessed a firearm in or affecting interstate commerce; and (3) knew that he was in possession of the firearm. *United States v. Dancy,* 861 F.2d 77, 81 (5th Cir. 1988).  The only element Davis disputes is that he was in possession of the shotgun.

Davis correctly argues that a defendant may not be convicted based solely on his own uncorroborated confession. *United States*

*v. Ybarra,* 70 F.3d 362, 365 (5th Cir. 1995). Nonetheless, "[t]he corroborative evidence alone need not prove the defendant's guilt beyond a reasonable doubt, nor even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that the defendant is guilty.... [E]xtrinsic proof [is] sufficient which merely fortifies the truth of the confession, without independently establishing the crime charged." *Id.* (quoting *United States v. Garth*, 773 F.2d 1469, 1479 (5th Cir. 1985)).

Here, the evidence shows that during the execution of the search warrant the officers found Davis in a rear bedroom, and the shotgun was in the closet. Also, there was evidence that Davis "use[d] the house as [his] own." Such evidence fortifies Davis's confession. We conclude that Davis has not shown that the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking.

The district court's judgment is AFFIRMED.