# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

m 98-51124

## UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

## JACKSON AYOBAM OLANIYI-OKE,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

December 30, 1999

Before HIGGINBOTHAM and SMITH, Circuit Judges, and DUPLANTIER, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

Jackson Olaniyi-Oke was convicted of conspiracy, fraud in connection with access devices, mail fraud, fraud involving fictitious name and address, bank fraud, money laundering, and fraudulent use of a social security number. He contends that the evidence is insufficient on two of the money laundering counts and that, as to the other counts, the court erred in denying motions for continuance based on the inability to locate a prospective witness and the desire to challenge the racial composition of the jury venire. We find no error in the the denial of continuance but reverse, for insufficient evidence, the convictions on the two subject money laundering counts.

I.

We address only the facts relevant to the two money laundering counts as to which Olaniyi-Oke asserts there was insufficient evidence. One Richard Porter was issued a MasterCard by Maryland Bank of North America ("MBNA"). Olaniyi-Oke impersonated Porter in notifying MBNA that Porter's address had changed to a mailbox owned by Olaniyi-Oke. MBNA later mailed three convenience checks to the new address, one of which later was found at Olaniyi-Oke's residence.

One of the checks was used partially to pay off the balance of another credit card owned by Porter, a NationsBank Visa card. The address for the Visa had also been changed by Olaniyi-Oke, and a requested replacement card had been sent to that new address. After the credit balance was partially paid by the MBNA check, the Visa was used to purchase one computer at each of two Houston businesses, Computer City and Office Max. The computers were found in Olaniyi-Oke's residence, and his calling card had been used to make calls to the Computer City location.

Olaniyi-Oke argued that another man whom he had met at a nightclub committed the

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

crimes. According to Olaniyi-Oke, that man had stayed at Olaniyi-Oke's home, leaving evidence of the fraud scheme including the two computers.

Olaniyi-Oke contends there is insufficient evidence on counts 14 and 15, which charge money laundering for the purchase of the two computers with Richard Porter's Visa. Olaniyi-Oke argues that there is no evidence that the purchases were made to promote further fraud, or to conceal the proceeds of unlawful activity, and therefore that there is insufficient evidence to support his conviction on those counts. He contends that the purchases were merely acts of money spending, in which funds generated by fraud were used to buy computers for personal use. He also avers that the court erred in denying his motions for continuance based on his inability to locate a prospective defense witness and to investigate an alleged underrepresentation of minorities on the jury venire.

## II.

We first consider the claim of insufficient evidence. "In evaluating a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and uphold the verdict if, but only if, a rational juror could have found each element of the offense beyond a reasonable doubt." *United States v. Brown*, 186 F.3d 661, 664 (5th Cir. 1999). This review is *de novo*, and "[i]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a defendant is entitled to a judgment of acquittal." *Id.* (internal quotation marks omitted).

Both counts charge money laundering in violation of 18 U.S.C. § 1956(a)(1).[2] The

___

[2] That section provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful
(continued...)

statute requires the government to prove that the defendant conducted or attempted to conduct a financial transaction that he knew involved the proceeds of unlawful activity. *See United States v. Burns*, 162 F.3d 840, 847 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1477 (1999).

Olaniyi-Oke does not contend that the government failed to provide sufficient evidence of these elements. The statute further requires the government to prove either (1) that the defendant so acted with the intent to promote or further specified unlawful activity (the "promotion prong") or (2) that he knew the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the unlawful activity (the "concealment prong"). *See* 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B)(i); *Brown*, 186 F.3d at 667-68; *Burns*, 162 F.3d at 847. Olaniyi-Oke avers that the evidence is insufficient to demonstrate either the promotion prong or the concealment prong, and we agree.

The government argues that the computer purchases were intended to promote a

___

(...continued)
activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activitySS

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or . . .

(B) knowing that the transaction is designed in whole or in partSS

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; . . .

shall be sentenced to a fine . . . or imprisonment . . . or both.

"Specified unlawful activity" is defined at § 1956(c)(7).

fraudulent scheme, but it presented no evidence that the computers were intended for use in any scheme. There is no evidence that the computers were intended for anything other than fully legal personal use; the government's suggestion that the computers were intended for sale is not substantiated by any evidence.[3] Absent a showing of specific intent, the promotion prong is not satisfied even by a showing that the financial transaction did promote the carrying on of unlawful activity. *See Brown*, 186 F.3d at 670.

The government also argues that the purchases were designed to conceal according to the concealment prong. The argument is that Olaniyi-Oke used Porter's name and credit card to purchase the computers, making "obvious" his intent to conceal. Contrary to the government's contention, the only thing obvious about such a transaction is that Olaniyi-Oke was fraudulently using another person's credit card, for which he was convicted on other counts.

The government argues that an intent to conceal can be inferred from the fact that Olaniyi-Oke traveled to Houston to make the purchases rather than making them in his home city of Austin. If one desires fraudulently to use another's credit card to make purchases, it is merely logical to travel out of town to do so to lessen the risk of discovery for illegal use of the credit card, but such logic does not convert the act into money laundering. Likewise, making two separate purchases instead of one is logical to reduce the likelihood that any store personnel would recall details of the purchase.[4] Not wanting to be prosecuted for

the illegal use of a credit card does not equate to money laundering.

Olaniyi-Oke could not have purchased the computers using his own name and Porter's credit card. Without evidence to the contrary, the intent of such a fraudulent purchase is merely to obtain goods using funds rightfully belonging to another, not to conceal the nature, location, source, ownership, or control of those funds: "If transactions are engaged in for present personal benefit, and not to create the appearance of legitimate wealth, they do not violate the [concealment prong of the] money laundering statute." *United States v. Garcia-Emanuel*, 14 F.3d 1469 (10th Cir. 1994) (quoted in *United States v. Willey*, 57 F.3d 1374, 1384 (5th Cir. 1995)).

> In one sense, the acquisition of any asset with the proceeds of illegal activity conceals those proceeds by converting them into a different and more legitimate-appearing form. But the requirement that the transaction be designed to conceal implies that more than this trivial motivation to conceal must be proved.

*Willey*, 57 F.3d at 1384 (internal citation omitted) (citing *Garcia-Emanuel*, 14 F.3d at 1474).

The government's argument would convert every purchase of goods with illegally obtained credit into money laundering, which we have rejected: Money spending is not criminal under § 1956(a)(1). *See Brown*, 186 F.3d at 670-71. The statute is intended to punish "conduct that is really distinct from the underlying specified unlawful activity[,] . . . [not to] provide overzealous prosecutors with a means of imposing additional criminal

---

[3] At least one of the computers was partially assembled for use.

[4] It is logical to think that more individuals purchase only one computer than purchase two. The government therefore argues that the purchase of two computers creates an inference beyond a reasonable doubt that the computers were not for personal use. This argument is not credible. While (continued...)

---

(...continued)
the stockpiling of numerous computers might lead to such an inference, it is not even unknown for one individual to purchase two computers for his own personal use, let alone to purchase one or both of them as gifts, for use in a business, or for a myriad of other purposes.

liability any time a defendant makes benign expenditures with funds derived from unlawful acts." *Brown*, 186 F.3d at 670. As with a drug dealer who purchases cellular phones for unrelated personal use, a mail/bank-fraud operator who purchases two computers for unrelated personal use does not thereby commit money laundering. *See Brown*, 186 F.3d at 669 (discussing *United States v. Jackson*, 935 F.2d 832 (7th Cir. 1991)); *United States v. Cavalier*, 17 F.3d 90, 93 (5th Cir. 1994) (same).

### III.

Olaniyi-Oke contends that the court erred in denying his motion for continuance to secure the presence of a prospective defense witness, his nephew Stephen Adebayo. We review the denial of a continuance for abuse of discretion. *See United States v. Shaw*, 920 F.2d 1225, 1230 (5th Cir. 1991). When a continuance is requested based on the unavailability of a witness, the party seeking a continuance must demonstrate (1) that due diligence was exercised to obtain the attendance of the witness; (2) that the witness would tender substantial favorable evidence; (3) that the witness will be available and willing to testify; and (4) that denial of the continuance would materially prejudice the movant. *See id*. The required prejudice has also been termed "severe" prejudice and "serious" prejudice. *See id.*; *United States v. Dupre*, 117 F.3d 810, 823 (5th Cir. 1997).

Olaniyi-Oke argues that Adebayo would corroborate his defense, namely that a man staying with Olaniyi-Oke committed the crimes. Before indicting Olaniyi-Oke, the government obtained a sworn statement in which Adebayo stated that he had never met or heard of the man whom Olaniyi-Oke claims was responsible for the crimes. While in a later interview Adebayo did "recall" that someone had stayed at Olaniyi-Oke's residence, this recollection directly contradicts portions of his previous sworn statement. In light of these statements, Olaniyi-Oke's mere assertion that Adebayo would provide favorable testimony does not establish that Adebayo would tender substantially favorable testimony.

Olaniyi-Oke also failed to establish that Adebayo would be available and willing to testify, because Adebayo had failed to appear at trial despite a subpoena. The government and Olaniyi-Oke had attempted to locate Adebayo without success. The court did not abuse its discretion in denying a continuance.

IV.

Just before voir dire began, Olaniyi-Oke sought a continuance to investigate whether the composition of the jury venire was a result of a violation of the Jury Selection and Service Act of 1968 ("Jury Act"), 28 U.S.C. §§ 1861-1878, and/or of the Sixth Amendment. Olaniyi-Oke believed that the venire underrepresented minorities in consisting of only one black and four Hispanics. To the extent that a district court's decision rests on its interpretation of the statutory language, the standard of review is *de novo*. *See United States v. Hemmingson*, 157 F.3d 347, 358 (5th Cir. 1998). We review denial of a continuance for abuse of discretion.[5] *See Shaw*, 920 F.2d at 1230.

The Jury Act provides that "all litigants in Federal courts entitled to trial by jury shall have the right to . . . petit juries selected at random from a fair cross section of the community in the district or division where the court convenes." 28 U.S.C. § 1861. To obtain relief under the Jury Act, a defendant must prove a "substantial failure" to comply with the Act's provisions, a substantial failure being one that destroys the random nature or objectivity of the selection process. *See Hemmingson*, 157 F.3d at 358; 28 U.S.C. § 1867(a).

Olaniyi-Oke has no evidence with which to challenge the selection process, which is what § 1867 is designed for, but instead wants to investigate solely because *his venire* had "too few" minorities.[6] First, Olaniyi-Oke fails to understand the nature of statistics. If it were required that every venire match the proportions of minorities in the community, that would be the antithesis of randomness, given the size of the sample. *See United States v. McKinney*, 53 F.3d 664, 671 (5th Cir. 1995) (noting that in a truly random system, minorities will be over-represented in some panels and under-represented in others). Second, his claim is not cognizable under the Jury Act: "The happenstance of a disproportionately white jury is simply not enough to prevail under the Act." *Hemmingson*, 157 F.3d at 359. Olaniyi-Oke made no showing of any failure to comply with the Jury Act, and therefore the court did not abuse its discretion in denying his motion for continuance on this ground.

"The Sixth Amendment guarantees a criminal defendant the right to a trial by a jury selected from a fair cross-section of the community." *United States v. Alix*, 86 F.3d 429, 434 (5th Cir. 1996).

A defendant establishes a prima facie violation of the fair-cross-section requirement by showing the following: The defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the

---

[5] Olaniyi-Oke refers to his motion as a motion for continuance, but it was termed a "motion to stay." The discrepancy occurs because Olaniyi-Oke was not claiming to have sufficient evidence to demonstrate a violation, as required under either the Jury Act or the Sixth Amendment, but rather was requesting a continuance of at least 30 days to investigate. Therefore, both parties agree that, whatever the motion should be termed, the appropriate standard of review is abuse of discretion, which, apart from any district court interpretations of law, is correct. *See Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 737 (5th Cir. 1999) (stating the general standard for motions to stay).

[6] Olaniyi-Oke's motion did contain a comparison of 1990 census figures with the jury pool for November 1993. Given that trial took place in 1998, however, this information is irrelevant, and thus Olaniyi-Oke does not even cite this "evidence" on appeal.

community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* A defendant cannot establish a *prima facie* violation by relying solely on the composition of the jury at his own trial. *See id.* at n.3. Olaniyi-Oke presented no evidence of element (3), and therefore he failed to establish a *prima facie* violation. The court did not abuse its discretion in denying a continuance.

The judgments of conviction on counts 14 and 15 are REVERSED and REMANDED for entry of judgments of acquittal, and the judgments of conviction on all other counts are AFFIRMED. The judgment of sentence is VACATED and REMANDED for resentencing.[7]

---

[7] The prison sentence and supervised release imposed for counts 14 and 15 run concurrently with the sentence on the remaining counts, and therefore reversing the two counts does not reduce Olaniyi-Oke's prison term or period of supervised release. The court imposed a $100 special assessment on all counts, however, and therefore Olaniyi-Oke must be resentenced to eliminate that assessment as to counts 14 and 15.