# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 4, 2003

## STATE OF TENNESSEE v. CLORIE L. JACKSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 01-818      Roger Page, Judge**

---

### No. W2002-02148-CCA-R3-CD  - Filed May 30, 2003

---

The Defendant, Clorie L. Jackson, was convicted by a jury of forgery and money laundering. The trial court subsequently merged the forgery conviction into the money laundering conviction,[1] and sentenced the Defendant to nineteen years in the Department of Correction. In this direct appeal, the Defendant challenges the sufficiency of the evidence in support of the money laundering conviction, as well as the trial court's jury instructions on that offense. Because we find the evidence insufficient to support the money laundering conviction, we reverse that conviction and dismiss the charge. The conviction for forgery is reinstated. The case is remanded to the trial court for sentencing on the forgery conviction.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part; Remanded

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Michael Rasnake, Jackson, Tennessee, for the appellant, Clorie L. Jackson.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; Jerry Woodall, District Attorney General; and James Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]For future reference, we note that the trial court erred in merging the two offenses. Tennessee's Money Laundering Act of 1996 provides that a person charged with a money laundering offense "may also be jointly charged, tried and convicted in a single prosecution for committing any related specified unlawful activity, which shall be separately punished." Tenn. Code Ann. § 39-14-904.

**OPINION**

Andre Cole testified that his truck was broken into on June 12, 2001. Taken from the truck were his checkbook and some compact discs. Mr. Cole called his bank and stopped payment on the missing checks.

Heather Stanley worked for the Circuit City store in Jackson, Tennessee. She testified that, on June 25, 2001, the Defendant entered the store with a woman and tried to purchase some merchandise. To pay for the items, the Defendant proffered a check in the amount of $375 on the account of Andre Cole. The check was signed "Andre Cole." Upon request, the Defendant presented an identification card bearing the name "Andre Cole." Suspecting the identification card to be fraudulent, Ms. Stanley called the police. Having retrieved the identification card, but not the check, the Defendant began leaving the store. He had obtained no merchandise from Circuit City, and the store had retained the forged check.

As the Defendant was leaving the store, he was met by Officer Craig Bradford. Officer Bradford testified that he asked the Defendant his name and the Defendant responded, "Andre Cole." Officer Bradford asked for some identification and the Defendant handed him the card bearing the name "Andre Cole." Officer Bradford peeled back a portion of the identification card and saw the name "Gerald Jones." Suspecting the identification card was not authentic, Officer Bradford asked the Defendant for his name again; this time, the Defendant responded with his correct name.

Officer Bradford testified that he reviewed the check retained by Circuit City and stated that it was signed with the name "Andre Cole." Officer Bradford recovered Mr. Cole's checkbook from the Defendant. Officer Bradford testified that the Defendant told him that he was trying to buy merchandise with the check and that he planned on subsequently returning the merchandise to Circuit City for a refund.

Investigator Gerald Wiltshire took a written statement from the Defendant, which he read into the record. In his statement, the Defendant explained that he had been given the checks by a man named Kevin. After getting the checks, he gave his driver's license to a woman named Nicole, who then obtained the false identification card from a Kinko's store. The card bears the Defendant's photograph and the name Andre Cole, which was signed by the Defendant. The Defendant and a woman named Tressie then went to the Circuit City store in Jackson and picked out a camcorder. Tressie filled out the check, and the Defendant signed Andre Cole's name to the check. In his statement, the Defendant explained that they were going to take the merchandise back to Kevin, who was going to sell it and split the money with them.

On the basis of this proof, the jury convicted the Defendant of one count of forgery and one count of money laundering.

The Defendant now challenges the sufficiency of the evidence in support of the money laundering conviction. The Defendant does not contest his forgery conviction.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Our criminal code provides, in pertinent part, as follows:

> It is an offense to knowingly use, conspire to use or attempt to use proceeds derived directly or indirectly from a specified unlawful activity to conduct or attempt to conduct a financial transaction or make other disposition with the intent to conceal or disguise the nature, location, source, ownership or control of the criminally derived proceeds.

Tenn. Code Ann. § 39-14-903(a)(1). The Defendant contends that the State failed to adduce sufficient proof that he uttered the forged check "with the intent to conceal or disguise the nature, location, source, ownership or control of the criminally derived proceeds." The State responds that the Defendant's stated intention to turn the goods he tried to purchase from Circuit City into cash, either by returning them for a refund or by allowing them to be resold, proves the Defendant's intent to conceal or disguise the "derived proceeds."

We have found no Tennessee cases considering the sufficiency of the proof necessary to sustain a conviction under the statutory provision defining "money laundering." The Defendant's challenge, then, presents us with an issue of first impression.

Tennessee's money laundering statutes offer us some definitions with which we may begin our analysis. For instance, the term "financial transaction"

> means a purchase, sale, loan, pledge, contract, gift, payment, and also includes a withdrawal, transmission of funds, transfer between accounts or deposit, of monetary or negotiable instruments, funds or an exchange of any other property, including, but not limited to, currency, precious metals, stones or jewelry, tickets, stamps or credit in a financial institution.

Tenn. Code Ann. § 39-14-902(2). In this case, the Defendant proffered payment for goods in the form of a forged check. A check is a negotiable instrument. See id. § 47-3-104. That the check was forged does not remove it from the definition of "negotiable instrument." See id. However, the definition of "financial transaction" references "or an exchange of any other property." (emphasis added). That is, the definition appears to require that some exchange occur. Here, no exchange occurred because, suspecting the check to be forged, the Circuit City store did not complete the sale. Nevertheless, section 39-14-903(a)(1), setting forth the criminal penalties, includes attempts to conduct financial transactions. Certainly, the Defendant was attempting to engage in a "financial transaction" insofar as he was attempting to perpetrate an exchange of a negotiable instrument for merchandise.

The term "knowingly uses or attempts to use proceeds derived directly or indirectly from a specified unlawful activity" is defined as meaning

> that any person or party to the transaction or act knew that the property or proceeds involved in the transaction or act represented or constituted, either in whole or in part, proceeds from some form, though not necessarily which form, of any criminal offense under the laws of this state, or any other jurisdiction.

Id. § 39-14-902(3). The term "proceeds" is not defined. However, the term "property" is defined as meaning "anything of value, and includes any interest in property, including any benefit, privilege, claim or right with respect to anything of value, whether real or personal, tangible or intangible." Id. § 39-14-902(4). In this case, the applicability of the offense to the Defendant's conduct requires that the term "proceeds" be construed so as to include the checkbook obtained by the Defendant from the man named Kevin. We think that the definition of "property," which term is referenced in the description of what it means to "use proceeds," is sufficiently broad to include stolen checks. Moreover, the proof is certainly sufficient to support the inference that the Defendant knew that the checkbook had been obtained through some form of criminal offense.

Finally, the term "specified unlawful activity" is defined as meaning "any act, including any preparatory or completed offense, committed for financial gain that is punishable as a felony under the laws of this state . . . [.]" Id. § 39-14-902(5)(A). In the context of this case, the unlawful activity was the burglary of Andre Cole's truck and the theft of his checks. Theft is punishable as a felony in Tennessee so long as the value of the property obtained by the thief is over $500. See id. § 39-14-

105. Here, the State proffered no proof as to the value of Mr. Cole's missing checks; therefore, we cannot assume that their value was such as to render their theft a felony. However, burglary of a vehicle is a felony. See id. § 39-14-402(a)(4), (d). Thus, the check forged by the Defendant meets the definition of a proceed derived from a specified unlawful activity.

The term "with the intent to conceal or disguise the nature, location, source, ownership or control of the criminally derived proceeds" is not defined. Thus, we arrive at the crux of the Defendant's argument regarding the sufficiency of the evidence. Did the Defendant's actions in this case constitute the crime of money laundering?

Of course, the keystone to construing any statute is a determination of legislative intent. See, e.g., State v. Johnson, 79 S.W.3d 522, 526 (Tenn. 2002). Tennessee's Money Laundering Act of 1996, Tennessee Code Annotated section 39-14-901 et seq., contains no explanation of the legislature's purpose in passing the Act. However, the legislative history attendant to the bill's passage[2] indicates that it was modeled after the federal Money Laundering Control Act of 1986. See 18 U.S.C. §§ 1956, 1957. That Act "targets 'the lifeblood of organized crime': the conversion of funds derived from illegal activities into a 'clean' or usable form." Money Laundering, 39 Am. Crim. L. Rev. 839, 840 (Spring, 2002) (citation omitted). Money laundering has been described as "the process by which one conceals the existence, illegal source, or illegal application of income, and disguises that income to make it appear legitimate." President's Commission on Organized Crime, Interim Report to the President and Attorney General, The Cash Connection: Organized Crime, Financial Institutions, and Money Laundering 7 (1984). According to one law review article,

> money laundering typically [is] effectuated through a three-step process: (1) the criminally derived money is "placed" into a legitimate enterprise; (2) the funds are "layered" through various transactions to obscure the original source; and (3) the newly laundered funds are integrated into the legitimate financial world "in the form of bank notes, loans, letters of credit," or other recognizable financial instruments.

39 Am. Crim. L. Rev. 839, 840 (Spring, 2002).

Like the Tennessee statutory provision at issue in this case, the federal Act prohibits, inter alia, financial transactions designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activities. See 18 U.S.C. § 1956(a)(1)(B)(i). In construing this aspect of the federal Act, however, federal courts have recognized that an accused who simply uses the proceeds of illegal activity to purchase items, is not guilty of money laundering:

> In one sense, the acquisition of any asset with the proceeds of illegal activity conceals those proceeds by converting them into a different and more legitimate-appearing

___

[2] See generally Tennessee General Assembly, legislative history, House Bill 47 & Senate Bill 379, Proceedings Jan. 31, 1996 through April 26, 1996; Legislative History/Recording Program, Department of State, Library and Archives, Nashville, Tennessee.

form. But the requirement that the transaction be <u>designed</u> to conceal implies that more than this trivial motivation to conceal must be proved.

<u>United States v. Willey</u>, 57 F.3d 1374, 1384 (5th Cir. 1995) (citation omitted). <u>See also United States v. Garcia-Emanuel</u>, 14 F.3d 1469, 1474 (10th Cir. 1994).

Thus, in <u>United States v. Olaniyi-Oke</u>, 199 F.3d 767 (5th Cir. 1999), the court reversed a conviction under the concealment prong of the federal money laundering statute, 18 U.S.C. § 1956(a)(1)(B)(i). The defendant had used a fraudulently-obtained credit card to purchase two computers. The government argued that the defendant used the rightful credit card owner's name and card to buy the computers, making "obvious" his intent to conceal. The court disagreed, stating, "[c]ontrary to the government's contention, the only thing obvious about such a transaction is that [the defendant] was fraudulently using another person's credit card, for which he was convicted on other counts." 199 F.3d at 770. The court continued:

> [The defendant] could not have purchased the computers using his own name and [the victim's] credit card. Without evidence to the contrary, the intent of such a fraudulent purchase is merely to obtain goods using funds rightfully belonging to another, not to conceal the nature, location, source, ownership, or control of those funds[.]
> . . .
> The government's argument would convert every purchase of goods with illegally obtained credit into money laundering, which we have rejected: Money spending is not criminal under § 1956(a)(1). The statute is intended to punish "conduct that is really distinct from the underlying specified unlawful activity[,] . . . [not to] provide overzealous prosecutors with a means of imposing additional criminal liability any time a defendant makes benign expenditures with funds derived from unlawful acts."

199 F.3d at 771 (citations omitted).

In the instant case, the Defendant attempted to purchase merchandise by passing a forged check. The Defendant's conduct is a classic case of forgery. <u>See</u> Tenn. Code Ann. § 39-14-114(a). There is no proof here that the Defendant was attempting to conceal anything other than his <u>own</u> identity. The Defendant did nothing to conceal or disguise the nature, location, source, ownership or control of the forged check. The face of the check indicated to whom it belonged. The Defendant was not trying to launder the check; he was trying to negotiate it by pretending that he was Andre Cole. Stated quite simply, this is an act of forgery, not an act of money laundering. Otherwise, every time an accused forges a stolen check, he or she would be guilty of money laundering. However, we see no indication in our money laundering statutes that the legislature intended to subsume the crime of forgery into the crime of money laundering.

The State argues that "the proof establishes that the defendant did more than write a check derived from illegal activity." Rather, his "attempt to purchase goods at Circuit City was the first step in a process to conceal that the proceeds were derived from a forged check."[3] That is, "the defendant intended to convert the merchandise bought with the forged check into cash -- a currency that effectively washes away any connection between the defendant and the ill-begotten goods." We are unpersuaded. The State's argument would also make a money-launderer of anyone who stole a vehicle and then sold it for parts. The same argument would apply to anyone who forged a check, cashed it, and then deposited the cash into his or her bank account. We see no indication in Tennessee's money laundering statutes that the legislature intended to turn such pedestrian, albeit criminal, transactions into money laundering. We note that if the Defendant's crime is forgery, it is a Class E felony. See Tenn. Code Ann. § 39-14-114(c). If the crime is money laundering, it is a Class B felony. See Tenn. Code Ann. § 39-14-903(a)(2).

We acknowledge that, had the Defendant forged an entire series of checks and thereby acquired goods which he subsequently and systematically "fenced" in order to accumulate cash wealth which was then deposited into a legitimate bank account, the State's argument would be much stronger. That set of facts is not, however, presently before us.

In our view, the legislature did not intend that conduct such as simple forgery and attempting to pass forged instruments would also constitute the crime of money laundering. There is insufficient proof that the Defendant possessed the intent to "conceal or disguise" criminally derived proceeds. Based on the foregoing analysis, we conclude that the evidence presented at trial is insufficient to support a finding that the Defendant violated the Money Laundering Act of 1996 beyond a reasonable doubt. Accordingly, we reverse the Defendant's conviction for money laundering and dismiss the charge.

The Defendant also argues that the trial court committed plain error when it instructed the jury on an alternative theory of money laundering, to wit, that "[i]t is an offense to knowingly use proceeds derived directly or indirectly from a specified unlawful activity with the intent to promote, in whole or in part, the carrying on of a specified unlawful activity." Tenn. Code Ann. § 39-14-903(b)(1). The Defendant points out that the charging instrument uses only the language contained in subsection (a) of the statute, as set forth above. The State contends that, because the indictment contains a reference to section 39-14-903, the Defendant was on notice that he could be prosecuted under either theory. However, the State does not contend that the evidence was sufficient to support this alternative theory, instead arguing only that the evidence is sufficient to support a conviction under subsection (a). The State makes no argument that the Defendant's actions in attempting to pass the forged check were done with the intent to promote the carrying on of a specified unlawful activity. Accordingly, we find that the evidence is not sufficient under either theory, and therefore any error in the jury instructions is moot and need not be further addressed by this Court.

---

[3] We note that the State's use of the term "the proceeds" in this sentence refers to the merchandise that the Defendant was attempting to buy from Circuit City. However, "the proceeds" relied on by the State in prosecuting the Defendant under the money laundering statutes is the stolen check.

The Defendant's conviction for money laundering is reversed and the charge is dismissed. The Defendant's conviction for forgery is reinstated. This matter is remanded to the trial court for sentencing on the Defendant's forgery conviction.

_____

DAVID H. WELLES, JUDGE