United States Court of Appeals
Fifth Circuit

**F I L E D**

February 22, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 05-10065

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

HUMBERTO FIDEL REGALADO CUELLAR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before DAVIS, SMITH, and DENNIS,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Humberto Cuellar was arrested while traveling toward Mexico with a large sum of cash hidden in his car. He was convicted of international money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i). Cuellar argues that the district court improperly admitted the government's expert testimony. He also contends that the court should have granted his post-trial motion for acquittal because the government failed to present evidence sufficient to prove the required elements of the crime beyond a reasonable doubt. Because we agree that the government's evidence was insufficient to support a finding of guilt under the specific statute of conviction, we reverse and

render a judgment of acquittal.

## I.

The following facts were established by the government at trial: On July 14, 2003, Cuellar was traveling south toward Mexico on State Highway 77. He was pulled over by Deputy Kevin Herbert from the Schleicher County Sheriff's office. Because Cuellar spoke no English, Herbert called State Trooper Danny Nunez to assist him.

Nunez became suspicious of Cuellar because he was avoiding eye contact and seemed very nervous. Cuellar claimed he was on a three-day business trip despite the fact that he had no luggage or extra clothing. Nunez noticed a bulge in Cuellar's pocket, and when asked about it, Cuellar pulled out a wad of cash that smelled like marihuana to the officers. Nunez then asked and received permission to search the car and requested that a drug search dog come to the scene.

The dog alerted on the money in Cuellar's pocket and on the back floorboard area of the car. The officers found a hidden compartment underneath the floorboard containing $83,000 wrapped in duct tape inside blue sacks and marked with a Sharpie as to the amounts in each bundle.

The foregoing facts were established through the testimony of Herbert, Nunez, and Deputy Jason Chatham, who handled the drug dog. The government also offered testimony from Special Agent Richard Nuckles of U.S. Immigration and Customs, an expert on drug trafficking organizations, who testified that drug operations typically involve the flow of drugs from Mexico into the United States and the flow of cash proceeds of drug sales from the United States back into Mexico. He described the usual methods employed by drug traffickers in transporting drugs and money across the border. He also indicated that couriers of drug proceeds would almost certainly know they were involved in illegal activity and were carrying money.

Nuckles' description of the typical drug courier was consistent with the facts concerning Cuellar. Nuckles did not testify regarding what customarily happens to the drug money in Mexico other than to say that it is returned to those in charge of the drug trafficking operation.

The government's case consisted solely of the testimony of the officers and Nuckles. Cuellar took the stand and testified that he knew nothing about the money and was returning the car to Acuna, Mexico, at the behest of a shadowy character he identified only as Mr. Morcia. After all the evidence was presented, Cuellar moved for a judgment of acquittal, which was denied. The jury found him guilty. After trial, he filed a motion for judgment of acquittal, alleging that the government had failed to prove the required elements of the offense. The district court denied the motion and sentenced Cuellar.

## II.

The denial of a motion for judgment of acquittal is reviewed *de novo*. *United States v. Delgado*, 256 F.3d 264, 273 (5th Cir. 2001). The verdict will be affirmed if a reasonable trier of fact could conclude from the evidence that the elements of the offense were established beyond a reasonable doubt. *Id*. In assessing the sufficiency of the evidence, this court does not evaluate the weight of the evidence or the credibility of the witnesses but views the evidence in the light most favorable to the verdict, drawing all reasonable inferences to support the verdict. *Id*. at 273-74.

2

Cuellar argues that Nuckles's expert testimony should not have been allowed because the government failed to provide the defense with a summary of his expected testimony after the court ordered it to do so. Cuellar also contends that parts of Nuckles's testimony constituted impermissible drug courier profiling and should have been excluded on that basis. See *United States v. Williams*, 957 F.2d 1238, 1241 (5th Cir. 1992). Because the government failed to present sufficient evidence to support a guilty verdict, we do not reach these evidentiary issues.

Cuellar argues that we should exclude from our sufficiency of the evidence analysis any evidence that was improperly admitted. This argument is unavailing. In reviewing a verdict for sufficiency of the evidence, we ask whether a reasonable jury could have returned a guilty verdict based on the evidence presented to it.[1] We do not ask at this stage whether that evidence was properly admitted, so we review the sufficiency of the government's case in light of all the evidence, including the disputed expert testimony.

### III.

The plain language of the statute of conviction, 18 U.S.C. § 1956(a)(2)(B)(i), which outlaws international money laundering,[2] requires the government to prove five distinct elements. First, it must show that the transportation or attempted transportation of funds was across U.S. borders. Second, the funds in question had to be the proceeds of specified unlawful activity. Third, Cuellar must have known that the funds represented such proceeds. Fourth, his transportation of the funds must have been designed (in whole or in part) to conceal or disguise the nature, location, source, or control of the proceeds. Fifth, Cuellar had to know that such concealment was the design of his enterprise.

On the first element (the international element), the government offered sufficient evidence that Cuellar was attempting to transport money into Mexico. He admitted as much when he told the officers he was headed for Acuna. Although he claimed he did not know the money was in the car, the jury was free to disbelieve this testimony, especially given the inconsistencies in his story.

On the second and third elements, there

---

[1] *See United States v. Marshall*, 762 F.2d 419, 423 (5th Cir. 1985) (holding defendant not entitled to have court of appeals disregard inadmissible evidence in conducting sufficiency of evidence review).

[2] That section provides:

"(a)(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place (continued...)

[2](...continued)
in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United StatesSS

(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in partSS

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .

shall be sentenced . . . .

was sufficient evidence to allow a reasonable jury to infer that the money was proceeds of drug trafficking and that Cuellar knew that. The circumstances surrounding the arrest were suspicious to say the least, and Cuellar's proffered explanation for his activities was unimpressive. The money smelled of marihuana and was bundled in a way that is typical of drug trafficking. The jury was able to infer from the expert testimony regarding drug trafficking operations that Cuellar's conduct was consistent with that of a typical drug money courier who knows what he is carrying. Based on this evidence, a reasonable trier of fact could have concluded that the money hidden in the car was proceeds of drug trafficking and that Cuellar knew that.

On the fourth and fifth elements, we ask whether Cuellar's transportation of the money was designed in whole or in part to conceal or disguise its nature, location, source, ownership or control and whether Cuellar knew that.[3] Based on its statements at trial and in its appellate brief, the government apparently thought it had proven this element merely by showing that the money was hidden in Cuellar's car. Throughout the trial, the government focused its attention on establishing that the money was most likely drug proceeds, essentially overlooking the equally important concealment prong.

In *United States v. Oliniyi-Oke*, 199 F.3d 767, 771 (5th Cir. 1999), this court discussed the concealment prong of the money laundering statute in reversing the conviction of a defendant who used fraudulently-acquired credit cards to purchase computers.[4] We focused on the underlying purpose or "design" of the alleged laundering transaction and considered the design of the transaction to be the acquisition of computers. The concealment of the true source of the money was just part of the means the defendant employed to achieve this design.

---

[3] In other words, "the government must prove that the defendant *intended* to conceal the nature, location, source, ownership, or control of the proceeds of the unlawful activity." *United States v. Cihak*, 137 F.3d 252, 261 (5th Cir. 1998) (emphasis added) (citing *United States v. Dobbs*, 63 F.3d 391, 397-98 (5th Cir.1995)).

[4] The government argues that *Oliniyi-Oke* is inapplicable because the court was interpreting § 1956(a)(1) rather than § 1956(a)(2)(B)(i). The government attempts to distinguish the two sections on the ground that § 1956(a)(1) requires a "financial transaction" but § 1956(a)(2)(B)(i) proscribes certain transports, transmissions, and transfers of funds and nowhere mentions "financial transactions." The government's proffered distinction is irrelevant.

The statutory language focused on by the *Oliniyi-Oke* court is found in the concealment prong of § 1956(a)(1). Section 1956(a)(1) and (2)(B)(i) use identical language to require that the defendant's activity be "designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Differing language elsewhere in the two sections has no bearing on the meaning of their identical concealment prongs.

Precedent directly interpreting the concealment prong of § 1956(a)(1) is therefore binding on our interpretation of the same language in § 1956(a)-(2)(B)(i). See *United States v. Beiganowski*, 313 F.3d 264, 279 (5th Cir. 2002) (holding that an offense under § 1956(a)(2)(B)(i) is almost identical to an offense under § 1956(a)(1), with the lone exception of the international element of § 1956-(a)(2)(B)(i)). The government's concern with whether Cuellar was engaged in a financial transaction is therefore misplaced.

We held that if the defendant's purchases were "engaged in for present personal benefit, *and not to create the appearance of legitimate wealth*, they do not violate the concealment prong of the money laundering statute." *Id*. (citing *United States v. Garcia-Emanuel*, 14 F.3d 1469, 1474 (10th Cir. 1995) (emphasis added). Concealment of the money facilitated the transaction but was not itself the design of defendant's activity, so no money laundering occurred, and the statute was not violated. "[T]he requirement that the transaction be designed to conceal implies that more than this trivial motivation to conceal must be proved." *Id*.

The alleged laundering activity is Cuellar's transportation of the cash across the border to an unknown recipient. The underlying purpose of the enterprise, as the government presented it to the jury, was to get the money to Mexico. Concealing the money in the hidden compartment was the means employed to achieve this, but the concealment itself was not the "design" of Cuellar's activity, as the statute requires; the concealment was merely ancillary to Cuellar's design.

Taking hidden cash to Mexico is not money laundering unless some further design to conceal can be proved. The statute would prohibit taking drug money to Mexico for the purpose of concealing the fact that it is drug money. The statute does not outlaw concealing drug money from the police for the purpose of taking it to Mexico.

Thus, the government failed to prove the necessary design to conceal. Cuellar was not trying to "create the appearance of legitimate wealth" by smuggling drug money across the border. The financial channels through which the money might have flowed subsequent to Cuellar's venture are unknown. It is possible, even likely, that the money was destined for some kind of laundering once in Mexico, but the government provided no evidence to indicate such was the case.

Even if such evidence had been presented, the government would also have had to show that Cuellar knew his actions were designed to help launder the money. There is no evidence, nor was it alleged, that Cuellar would have had anything to do with any subsequent laundering.

In summary, under the government's theory, hiding drug money in one's car with the intent to take it across the Mexican border is international money laundering. At trial, the government successfully proved the case it set out to establish. This court's precedent indicates, however, that much more than that is required to uphold a conviction under the particular statute that the government (for whatever reason) elected to use, § 1956(a)(2)-(B)(i).

The government failed to provide sufficient evidence to show that Cuellar's activity was designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." Armed with a proper understanding of the statute, no rational trier of fact could have found Cuellar guilty based on the evidence presented at trial.[5]

---

[5] This does not necessarily mean that Cuellar will be free of prosecution. Under *United States v. Dixon*, 509 U.S. 688, 696 (1993), he may be tried for separate offenses arising from the same criminal transaction so long as "each offense contains an element not contained in the other." Thus the government may try Cuellar again, provided that (1) the new charge contains an element not found in § 1956(a)(2)(B)(i) and (2) § 1956(a)(2)(B)(i)
(continued...)

The conviction is REVERSED and a judgment of acquittal is RENDERED.

---

[5](...continued)contains an element not found in the second offense. Without passing judgment on the double jeopardy implications of any future prosecution, we note that the government may be able to make a case against Cuellar for bulk cash smuggling under 31 U.S.C. § 5332(a).

DAVIS, Circuit Judge, dissenting:

Because I am persuaded that the government proved the concealment prong of the money laundering offense in this case, I dissent from majority opinion.

The issue boils down to whether the government produced sufficient evidence to allow the jury to find that the defendant was knowingly transporting the funds (drug proceeds) under a plan designed at least in part "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956 (a)(2)(B)(i). The majority opinion concludes, and I agree, that the government offered sufficient evidence to establish that the money was proceeds of drug trafficking and that Cuellar knew that. The government also proved that the defendant knowingly concealed the money in the vehicle and intended to deliver the funds to Mexico. Based on the plain language of the statute, once the government produced evidence that allowed the jury to find these facts, the concealment element was established.

The jury could have found concealment on several levels. First, there was an overall plan or design (in which Cuellar was an integral part) to surreptitiously move cash proceeds of drug sales from the United States to Mexico. The expert on drug trafficking organizations testified that this was the standard modus operandi of such organizations. On another level, this plan in which Cuellar participated, effectively removed the funds from the

7

kingpin's hands and concealed his ownership and control of the funds. The removal of the funds and concealment of the owner of the funds also served to remove incriminating evidence from the possession of the kingpin and avoided possible government confiscation of the cash. The surreptitious movement of these funds to Mexico as part of the cycle of the drug trade was, of course, necessary because unlike a legitimate businessman, the drug kingpin could not go to the bank, deposit the funds and wire the money to his supplier in Mexico. The concealed movement of the funds was an integral part of the business of the drug enterprise. Also, and at its most basic level, Cuellar's method of carrying out his mission described above included hiding or concealing the funds in his vehicle and surrounding the money with animal hair to conceal the fund's location from drug dogs.

Other circuits have found on facts similar to ours that the government established the concealment prong of the money laundering statute. In United States v. Hurtado, 38 Fed. Appx. 661 (2d Cir. 2002)(unpublished), Hurtado challenged the sufficiency of the evidence to support her conviction for international money laundering. The evidence showed that she, along with two other adults and three children, were stopped as they crossed the border from the U.S. to Canada. Upon a search of her minivan, agents found several bags of luggage containing $540,000. Drug dogs alerted to two of the bags which contained the largest sums of money. The government presented testimony of customs agents

8

regarding methods used by drug cartels to exchange large quantities of drugs for cash using couriers and how money was customarily packaged. The funds in the minivan were packaged in a manner consistent with their testimony. The record evidence also reflected that Hurtado lied about her employment and had no legitimate explanation for the source of the cash or its destination. Based on this record the court concluded that a rational jury could find all the essential elements of the money laundering offense.

In United States v. Carr, 25 F.3d 1194 (3d Cir. 1994), the following evidence was found sufficient to satisfy the concealment prong of the statute: before departing on a trip from Philadelphia to Columbia, Carr received a blue carry-on bag from Gonzalez (the kingpin of the conspiracy); when asked to declare any monetary instruments in excess of $10,000, he stated that he had only $4,000 in cash; a search revealed $180,000 in cash hidden in containers in the bag and $6,000 on Carr's person; Carr told a highly suspicious, "if not incredible," story about the source and destination of the funds. The facts of our case are not materially different from those in Hurtado or Carr and in my view satisfy the concealment element of the international money laundering statute.

U.S. v. Oliniyi-Oke, 199 F.3d 767 (5th Cir. 1999), the case relied on by the majority, is not inconsistent with this result. Oliniyi-Oke involved a transaction in which the defendant used a fraudulently obtained credit card issued in the name of the victim

9

to purchase two computers. This court found that the transactions were engaged in for present personal benefit and not to create the appearance of legitimate wealth, so they did not satisfy the concealment prong of the money laundering statute. In other words, the straightforward use of a credit card to make a purchase does not satisfy the concealment element of the offense.

We are not dealing with a defendant's straightforward purchase of goods with a stolen or fraudulently obtained credit card. The government established in this case that the defendant purposefully concealed drug proceeds and was transporting them to Mexico in a manner consistent with drug trafficking patterns for the region. Under these facts, it is clear to me that the jury could easily find that the defendant knew "that such transportation, transmission, or transfer is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity" as is required for conviction under 18 U.S.C. § 1956(a)(2)(B)(i). As set forth above, the Second and Third Circuits dealing with factual situations substantially similar to these have found this concealment element satisfied.

Based on the plain language of the statute and the decisions of other circuits discussed above, I would affirm Cuellar's conviction. Accordingly, I respectfully dissent.